Julio C. Lopez GERENA, Plaintiff,
Appellant,

v.

PUERTO RICO LEGAL SERVICES,
INC., Defendant, Appellee.

No. 82–1474.

United States Court of Appeals,
First Circuit.

Argued Nov. 4, 1982.

Decided Jan. 7, 1983.

**448**

A.J. Amadeo Murga, Hato Rey, P.R., for plaintiff, appellant.

Jose E. Fernandez Sein, Rio Piedras, P.R., for defendant, appellee.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, and HEMPHILL,* Senior District Judge.

---

* Of the District of South Carolina, sitting by designation.

1. This case has a somewhat unusual procedural history. The defendant's initial motion to dismiss for lack of subject matter jurisdiction was denied by Judge Cerezo on the basis of *Varela v. Olivero*, No. 77–749 (D.P.R. June 16, 1977), which held that PRLS is a federal government actor for purposes of the due process clause of the fifth amendment. The case was subse-

BOWNES, Circuit Judge.

Plaintiff-appellant, Julio C. Lopez Gerena, appeals from an order of the district court for Puerto Rico dismissing his action against defendant-appellee, Puerto Rico Legal Services, Inc. (PRLS).[1] PRLS is a private nonprofit corporation organized under the laws of the Commonwealth of Puerto Rico to provide free legal assistance to individuals meeting eligibility guidelines. PRLS receives funds from the Commonwealth and from the Legal Services Corporation. The Legal Services Corporation is a private nonmembership nonprofit corporation established by the federal government to provide financial support for legal assistance in civil matters to persons financially unable to afford legal assistance. 42 U.S.C. § 2996b; *see generally* 42 U.S.C. §§ 2996–2996*l*.

Plaintiff claims that he was dismissed from his position at PRLS as an attorney serving as Deputy Director of PRLS's Humacao Center without procedural due process in violation of the fifth and fourteenth amendments of the United States Constitution. He brought an action under 42 U.S.C. § 1983 and the Constitution. The district court, 538 F.Supp. 754, dismissed holding that plaintiff had shown neither state action as required in a § 1983 suit, nor federal action as required in a suit brought directly under the Constitution. We affirm.

The district court focused primarily on the § 1983 claim and plaintiff's failure to show state action. Although there is some dispute over whether plaintiff agreed to try the case solely under the § 1983 theory, the parties presented to us claims addressing nearly exclusively the existence of federal

quently assigned to Judge Grant for trial. The defendant renewed its motion to dismiss immediately before trial. Judge Grant summarily denied the motion on the basis of Judge Cerezo's earlier order and because he did not want to delay the trial. The jury found for plaintiff and awarded him damages in the amount of $65,000. Defendant again renewed its motion. Judge Grant's order granting the motion is the subject of this appeal.

action. Because we feel, as apparently do the parties, that the allegations of federal action present the more serious and substantial issue, we address them first and in greater detail than the state action claims.

## I. FEDERAL ACTION

The due process clause of the fifth amendment provides that: "No person shall ... be deprived of life, liberty, or property, without due process of law ...." U.S. Const. amend. V. It applies to actions of the federal government, not those of private individuals. *Public Utilities Commission v. Pollak,* 343 U.S. 451, 461, 72 S.Ct. 813, 820, 96 L.Ed. 1068 (1952). The standards used for determining the existence of federal government action under the fifth amendment are identical to those used for finding state action under the fourteenth amendment. *Miller v. Hartwood Apartments, Ltd.,* 689 F.2d 1239, 1243 (5th Cir. 1982); *Warren v. Government National Mortgage Association,* 611 F.2d 1229, 1232, *cert. denied,* 449 U.S. 847, 101 S.Ct. 133, 66 L.Ed.2d 57 (1980); *Geneva Towers Tenants Organization v. Federal Mortgage Investors,* 504 F.2d 483, 487 (9th Cir.1974).

Plaintiff contends that PRLS's termination of his employment was government action for the purposes of the fifth amendment. The factors upon which plaintiff relies in making this assertion are that PRLS receives almost all of its funding from the Legal Services Corporation, a private nonprofit corporation that receives most of its funding from the federal government, and that PRLS is subject to substantial federal statutory and regulatory supervision. In short, plaintiff contends that the federal government has so far injected itself into the affairs of PRLS that its actions are in reality those of the federal government.

The issue, thus, is whether PRLS's termination of plaintiff can be fairly attributed to the federal government. The question of fair attribution was considered by the Supreme Court most recently in a 42 U.S.C. § 1983 action, *Lugar v. Edmondson Oil Co.,* —— U.S. ——, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). It involves a two-part inquiry: First, whether the deprivation was "caused by the exercise of some right or privilege created by the [government] or by a rule of conduct imposed by the [government] or by a person for whom the [government] is responsible," *id.* at ——, 102 S.Ct. at 2754, and second, whether the party charged with the deprivation is a government actor. *Id.* In this instance, the latter inquiry is all-important; plaintiff claims that PRLS acts as the government, and thus any action it takes would be action caused by a rule of conduct imposed by the government or by a person for whom the government is responsible. Thus, the two inquiries collapse into one, and we must focus our attention on whether PRLS is a government actor.

The Supreme Court has developed a number of "tests" [2] for determining whether a party is a "government actor." The application of each necessarily involves a "factbound inquiry." *Id.* We turn now to an examination of the facts in light of each of the tests relevant to the present case.

### A. Nexus Test

Under the nexus test, established by the Court in *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), a finding of government action may be made when "there is a sufficiently close nexus between the [government] and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the [government] itself." *Id.* at 351, 95 S.Ct. at 453. The mere fact of government regulation does not convert the regulated entity into the government for purposes of the fifth amendment. *See id.* at 350, 95 S.Ct. at 453. Rather, the government "normally can be held responsible for a private decision only

**2.** We note that the various formulae established in the many Supreme Court opinions examining the existence of state action are not tests in the traditional sense. More precisely, they are different methods of analyzing and appraising the facts and circumstances of a particular case.

when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [government]." *Rendell-Baker v. Kohn,* — U.S. —, —, 102 S.Ct. 2764, 2771, 73 L.Ed.2d 418 (1982) (quoting *Blum v. Yaretsky,* — U.S. —, —, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982)). In short, the party seeking to establish that action of a private party violated the Constitution must be able to point to the specific act or actions of the government which in fact motivated the private action.

■ In this case, plaintiff claims that pervasive government supervision and funding establish a sufficiently close nexus between PRLS and the federal government. Plaintiff, however, has not established that the funding or supervision in any way contributed to PRLS's decision to terminate his employment.

Plaintiff emphasizes that PRLS is almost entirely funded by the federal government through the Legal Services Corporation. The Supreme Court, however, has recently stressed in both *Blum v. Yaretsy,* — U.S. at —, 102 S.Ct. at 2789, and *Rendell-Baker v. Kohn,* — U.S. at —, 102 S.Ct. at 2771, that receipt of government funds does not render the government responsible for a private entity's decisions concerning the use of those funds. PRLS is, like the school in *Rendell-Baker* and the hospital in *Blum,* similar to a private contractor who receives funds to perform needed services. As the court pointed out in *Rendell-Baker,* "[a]cts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." — U.S. at —, 102 S.Ct. at 2771.

Similarly, the statutory provisions for government regulation of PRLS have no relation to PRLS's decision to discharge plaintiff. For example: 42 U.S.C. § 2996f(a)(2) requires the Legal Services Corporation to establish eligibility guidelines for clients of recipients based on the clients' economic status; 42 U.S.C. § 2996f(b) prohibits recipients from using

Legal Services Corporation funds to provide legal assistance for the purpose of procuring a nontherapeutic abortion or with respect to any proceeding relating to desegregation of schools. But, as in *Rendell-Baker,* "the decision[ ] to discharge [plaintiff was] not compelled or even influenced by any [government] regulation." — U.S. at —, 102 S.Ct. at 2771.

Plaintiff seeks to distinguish *Rendell-Baker* on the basis of the absence in that case of any regulations concerning personnel matters and the presence of personnel regulations in the Legal Services Corporation Act. We list a few examples of these personnel provisions. 42 U.S.C. § 2996f(a)(8) and 45 C.F.R. § 1616 require recipients such as PRLS to solicit recommendations of the organized bar before filling staff attorney positions. 42 U.S.C. § 2996e(e) classifies staff attorneys as state or local employees for purposes of the Hatch Act, 5 U.S.C. §§ 1501–08, which prohibits state and local employees whose principal work is connected with an activity financed in whole or in part by the federal government from engaging in certain political activities. 42 U.S.C. § 2996e(b)(5) prohibits employees of any recipient from engaging in strikes, boycotts, or public demonstrations or picketing while carrying out legal assistance activity. The Act directs recipients to take remedial or disciplinary action against any employee who fails to adhere to these or any other rules, regulations, and guidelines promulgated under the Act. Any such action, however, can be meted out only after notice and a hearing before an impartial hearing examiner. *See* 42 U.S.C. §§ 2996e(b)(2) & 2996j.

The presence of these and other statutory provisions does not distinguish this case from *Rendell-Baker.* The crucially important factor for finding a nexus between the government and the private actor is still missing; plaintiff has failed to allege that any government-imposed rule or regulation influenced PRLS's decision to discharge him. Thus, under the nexus test, plaintiff has not shown that PRLS's dismissal of him was federal action.

## B. Symbiotic Relationship Test

■ Under the symbiotic relationship test, established by the Supreme Court in *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), actions of a private party are attributable to the federal government if the government "has so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity . . . ." *Id.* at 725, 81 S.Ct. at 862. Under such circumstances plaintiff need not show how the government was particularly involved in the challenged action. Rather, the government is charged with all actions of the private party.

In *Burton* the critical facts were that a private restaurant that refused to serve blacks was located in a public facility and rent from the restaurant helped support the public facility. Most importantly, the profits the restaurant earned through discrimination were indispensible elements in the financial success of the government agency. *Id.* at 724, 81 S.Ct. at 861; *see Rendell-Baker v. Kohn*, —— U.S. at ——, 102 S.Ct. at 2772.

■ Plaintiff has not shown the existence of any such interdependence between the government and PRLS. Under the Legal Services Corporation Act not only is the financial success of the government unconnected with the affairs of Legal Services and the private entities it funds, the government has gone further and taken precautionary steps to ensure that Legal Services operates autonomously. *See, e.g.,* 42 U.S.C. § 2996(5) (legal services program must be kept free from political pressures); *id.* § 2996(6) (attorneys providing legal assistance must have full freedom to protect best interests of clients); *id.* § 2996c(c) (members of Board of Corporation not government employees); *id.* § 2996d(b)(2) (no political qualifications for employees of Corporation or its recipients); *id.* § 2996e(e) (limiting political activity of Corporation and recipient employees).

Plaintiff, in essence, argues that the funding and regulatory relationship between PRLS and the government creates the same type of relationship as existed between the Eagle Coffee Shoppe and the Wilmington Parking Authority in *Burton.* But, as the Supreme Court recently noted:

> privately owned enterprises providing services that the [government] would not necessarily provide, even though they are extensively regulated, do not fall within the ambit of *Burton.* That programs undertaken by the [government] result in substantial funding of the activities of a private entity is no more persuasive than the fact of regulation of such an entity in demonstrating that the [government] is responsible for decisions made by the entity in the course of its business.

*Blum v. Yaretsky*, —— U.S. at ——, 102 S.Ct. at 2789 (citations omitted).

## C. Public Function Test

■ Under the public function test activity of a private entity is attributable to the federal government if the private entity exercises "powers traditionally exclusively reserved to the [government]." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974). That a particular business is "affected with the public interest," *id.* at 353, 95 S.Ct. at 455, or "performs a function which serves the public," *Rendell-Baker v. Kohn*, —— U.S. at ——, 102 S.Ct. at 2772, does not convert its acts into those of the government. The function must be one that was traditionally exclusively performed by the government.

■ The provision of legal assistance in actions relating to civil matters to those who are financially unable to pay the fees of privately financed attorneys has never been a traditional exclusive function of the federal government. In fact, it was not until 1974 with the passage of the Legal Services Corporation Act that the federal government became directly involved in financing organizations that provide legal services to the needy. Such services are "essentially a private function traditionally filled by retained counsel, for which state office and authority are not needed." *Polk*

**452**

County v. Dodson, 454 U.S. 312, 319, 102 S.Ct. 445, 450, 70 L.Ed.2d 509 (1981) (footnote omitted). We conclude that PRLS does not perform a traditionally public function.

In sum, plaintiff has failed, under all of the relevant tests, to demonstrate that PRLS's discharge of him from his position as Deputy Director can be fairly attributed to the federal government. We turn next to plaintiff's allegations of state action.

## II. STATE ACTION

■ Plaintiff alleges that PRLS violated 42 U.S.C. § 1983 by discharging him without due process in violation of the fourteenth amendment. The fourteenth amendment applies only to acts of the states, not those of private parties. *Rendell-Baker v. Kohn,* —— U.S. at ——, 102 S.Ct. at 2769; *Civil Rights Cases,* 109 U.S. 3, 11, 3 S.Ct. 18, 21, 27 L.Ed. 835 (1883). Thus, as was similarly required for the fifth amendment claim, plaintiff must show that PRLS's termination of him is fairly attributable to the Commonwealth of Puerto Rico.

Plaintiff has presented no evidence that can lead to a ruling that PRLS is a state actor. The only connection between PRLS and the Commonwealth is that the latter provides PRLS with some funding. As we stated above, the receipt of government funds alone is not enough to show either a nexus between PRLS and the Commonwealth, or that there is a "symbiotic relationship" between the two. Rendering legal services to the needy in civil matters is no more a traditionally exclusive public function of the Commonwealth than it is of the federal government.

*The district court's order dismissing plaintiff's action is affirmed.*