Phin COHEN, M.D., Plaintiff,

v.

**PRESIDENT AND FELLOWS OF HARVARD COLLEGE, et al., Defendants.**

Civ. A. No. 77-945-T.

United States District Court,
D. Massachusetts.

Aug. 4, 1983.

Cullen & Wall, Albert F. Cullen, Jr., Boston, Mass., for plaintiff.

Ropes & Gray, John M. Harrington, Jr., Marshall Moriarty, Boston, Mass., for defendants.

## MEMORANDUM

TAURO, District Judge.

The plaintiff, Phin Cohen, is a former assistant professor of nutrition at the Harvard School of Public Health (HSPH). He alleges that Harvard and HSPH violated his rights under the First and Fifth Amendments to the United States Constitution by failing to renew his appointment as an assistant professor. Cohen asserts that his appointment was not renewed in retaliation for his allegations that federal funds were being improperly allocated at Harvard. In addition to Harvard and HSPH, the other named defendants are Howard Hiatt, dean of HSPH, and Frederick Stare, chairman of the department of nutrition at HSPH. In addition to his constitutional claims, Cohen also alleges state law claims in tort and contract.

Defendants have moved for summary judgment on the ground that the decision not to renew Cohen's appointment is not governmental action and, therefore, is not subject to the First and Fifth Amendments. Cohen has moved *in limine* for a determination of the same issue. For the purposes of these motions, the parties have filed a stipulation of facts.

## I

The First and Fifth Amendments apply to actions of the federal government, not those of private individuals. *See Gerena v. Puerto Rican Legal Services,* 697 F.2d 447, 449 (1st Cir.1983). Cohen argues that there is a nexus between the federal government and the defendants sufficient to subject their actions to First and Fifth Amendment scrutiny. Cohen's theory is essentially twofold: (1) Harvard and HSPH were private parties acting under color of federal law, and (2) the connection between Harvard and the federal government is so close that Harvard can be considered as an officer or agent of the federal government.

## II

Cohen's first theory has no legal basis. Although a claim for deprivation of constitutional rights may be made against private parties acting under color of *state* law, 42 U.S.C. § 1983, there is no analogous cause of action against private parties acting under color of *federal* law. *Kelley v. Action for Boston Community Development,* 419 F.Supp. 511, 525 (D.Mass.1976).

## III

This leaves Cohen's contention that Harvard and HSPH were acting as arms of the federal government in deciding not to reappoint him. The key factual issue, then, is whether the challenged activity of Harvard and the other defendants can be considered actions of the federal government.

The question of whether federal action exists is determined by applying the same standards that are used in determining whether state action exists so as to trigger Fourteenth Amendment rights. *Gerena, supra,* at 449. The First Circuit in *Gerena* identified three tests for determining whether a termination of employment can be fairly attributed to the federal government.[1] First, the government may be held

---

1. These tests were developed by the U.S. Supreme Court in several cases, particularly *Lugar v. Edmonson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Rendell-Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

responsible if there is a sufficiently close nexus between the challenged action and the federal government. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453–54, 42 L.Ed.2d 477 (1974). As interpreted by the Supreme Court and the First Circuit, this means that there must be a "specific act or actions of the government which in fact motivated the private action." *Gerena, supra,* at 450. The second analysis is the symbiotic relationship test. The actions of a private actor may be attributed to the government, if the government "has so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity." *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 725, 81 S.Ct. 856, 861–62, 6 L.Ed.2d 45 (1961).[2] Finally, the public function test provides that private activity is attributable to the government if the private entity exercises "powers traditionally exclusively reserved to the [government]." *Jackson, supra,* 419 U.S. at 352, 95 S.Ct. at 454.

Cohen argues that Harvard's action in not renewing his appointment may be considered government action under each of these tests. He bases this assertion on a) the volume of federal funds received by HSPH, b) the fact that Cohen's position and research were federally funded, and c) the contention that, traditionally, scientific research has been funded exclusively by the federal government.

Cohen became an assistant professor of nutrition on September 1, 1969. His initial appointment and later reappointment were conditioned on his ability to raise funds from outside sources. These funds were raised primarily from the federal government.

Cohen contends that this funding arrangement establishes a nexus between Harvard and the government. Both the First Circuit and the Supreme Court have recently stated, however, that "receipt of

government funds does not render the government responsible for a private entity's decisions concerning the use of those funds." *Gerena, supra,* at 450. *See Rendell-Baker v. Kohn,* 457 U.S. 830, 839–40, 102 S.Ct. 2764, 2770–71, 23 L.Ed.2d 418 (1982); *Blum v. Yaretsky,* 457 U.S. 991, 1010, 102 S.Ct. 2777, 2789, 73 L.Ed.2d 534 (1982). Cohen attempts to distinguish these cases by pointing out that in the present case, he secured his own federal funding, rather than having the private entity secure the federal funding and use it to hire him. This distinction, however, is simply not relevant to the nexus analysis. The above-cited cases focus on whether the challenged action of the private entity was compelled or influenced by the government. There is no evidence that Cohen's employment termination was influenced by the government. The parties' stipulation of facts states:

> Neither the United States of America, nor any department, agency, officer, or employee thereof, took any part in any of the foregoing decisions [relating to Dr. Cohen's employment and non-renewal by HSPH], nor in any other decision made by Harvard with respect to Dr. Cohen's employment.
>
> \*     \*     \*     \*     \*     \*
>
> Specifically, except for the general equal opportunity and nondiscrimination provisions just referred to, the federal government did not impose, and Harvard did not agree to, any restriction on its freedom of choice with respect to decisions or procedures on faculty employment in connection with any of the projects on which Dr. Cohen worked while at Harvard.

Stipulation at pp. 5–6.

■ The stipulation establishes that the federal government did not dictate or take part in Harvard's decision not to renew Cohen's appointment. Under the nexus test, therefore, Harvard's action cannot be attributed to the government.

---

**2.** In *Burton,* a private restaurant that discriminated against blacks was located in a public facility, paid rent to the public facility, and its profits were indispensable to the financial suc-

cess of the government agency. On those facts, the discrimination practiced by the restaurant was attributed to the government.

Moreover, the funding arrangement between the government, Cohen and Harvard contemplates two independent decisions. First, the federal government decides whether to fund Cohen's grant proposal. Second, Harvard decides whether to appoint or reappoint Cohen. If the federal government had decided to cut Cohen's funds and, for that reason, Harvard had terminated him, then one might be able to argue that the termination was dictated by the federal action. In the present case, however, Harvard's decision was not based on any cut-off of federal funds. Indeed, the government is authorized to continue funding Cohen at a different institution.[3] Cohen, therefore, is unable to point to any specific "actions of the government which in fact motivated the private action." *Gerena, supra,* at 450.

Cohen also argues that there is such interdependence between him, the government and Harvard that it constitutes a "symbiotic relationship," under which Harvard's action could be attributed to the government. As the First Circuit made clear in *Gerena,* the symbiotic relationship category is very narrow. *Gerena, supra,* at 451. There, as here, the affairs of the private entity were unconnected with the financial success of the government or any government agency. That fact distinguishes the situation here from the symbiotic relationship found by the Supreme Court in *Burton, supra.* Moreover, the government insinuation into a position of interdependence with the private entity that was found in *Burton* is absent here. The funding arrangement involved in this case, therefore, lacks the elements necessary to establish a symbiotic relationship. *See Gerena* at 451; *Blum v. Yaretsky, supra,* at 2789.

Cohen's contention that Harvard's action should be attributed to the government because Harvard "exercises powers traditionally exclusively reserved to the [government]," *Jackson, supra,* 419 U.S. at 352, 95 S.Ct. at 454, is equally without merit. While it is true that the federal government has engaged in substantial funding of scientific research, such research is by no means within the exclusive domain of government. Further, the mere fact that Cohen worked at Harvard on research in which the public might be interested does not transmute Harvard's employment decision into federal government action.

Because Harvard's action cannot be attributed to the federal government, Cohen has no cause of action under the First and Fifth Amendments. Counts I and II of his amended complaint must, therefore, be dismissed.

## IV

Counts III and IV of Dr. Cohen's amended complaint allege state law causes of action pendent to the federal claims. Under some circumstances, the court may have the discretion to retain pendent state law claims even though all federal claims are dismissed. *See Rosado v. Wyman,* 397 U.S. 397, 404–5, 90 S.Ct. 1207, 1213–14, 25 L.Ed.2d 442 (1969). There is no compelling reason to do so in this case, however.[4]

---

**3.** *See* Stipulation of Facts at p. 6: "... if a principal investigator moves to a different institution, he may obtain the approval of the appropriate federal authorities to a continuation of the grant or contract at his new institution."

**4.** Counts III and IV of Cohen's amended complaint, alleging contract and tort causes of action, were first brought in the amendment to the original complaint allowed by the court on February 14, 1983. They have involved little of the court's time and so their retention would not serve the interests of judicial economy. Under these circumstances, dismissal of the pendent claims is appropriate. *See Jones v. Taibbi,* 508 F.Supp. 1069, 1074 (D.Mass.), *cert. denied* 454 U.S. 1085, 102 S.Ct. 643, 70 L.Ed.2d 620 (1981).