**Harry HUDSON, Plaintiff,**

v.

**S.D. WARREN CO., et al., Defendants.**

**Civ. No. 84–0278 P.**

United States District Court,
D. Maine.

July 8, 1987.

See also 608 F.Supp. 477.

Stephen P. Sunenblick, Sunenblick, Fontaine, & Reben, Portland, Me., for Harry Hudson.

William J. Kayatta, Jr., Pierce Atwood, Portland, for S.D. Warren, Malia, Maskewitz, Reiche and Roehner.

Gerald F. Petruccelli, Petruccelli, Erler Cohen & Cox, Portland, Me., Christopher T.

Katucki, for T. Berry, N. Auger, G. Snow and Stilphen.

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND FOR DISCOVERY SANCTIONS

GENE CARTER, District Judge.

This case is before the Court on a motion for summary judgment filed by Defendants Stilphen, Berry, Auger, and Snow ("the State Police Defendants") and a motion to dismiss for failure to state a claim filed by Defendants S.D. Warren Co., Mahlia, Maskewitz, Reiche, and Roehner ("the S.D. Warren Defendants"). This latter motion and Plaintiff's response thereto both rely on matters outside the pleadings and thus the motion will be treated as one for summary judgment. Also pending is the State Police Defendants' motion for discovery sanctions. For the reasons stated herein, summary judgment for Defendants will enter on Plaintiff's federal claim, discovery sanctions will be imposed, and the remaining state claims will be remanded to the state court from which they were removed.

## I. SUMMARY JUDGMENT MOTIONS

The case grows out of an undercover investigation conducted by Defendant Berry, a state policeman, with the knowledge of the remaining Defendants, at the S.D. Warren paper mill in Westbrook, Maine. During the investigation Berry reported to his State Police superiors that he had observed Plaintiff drinking on the job, that Plaintiff appeared intoxicated, and that Plaintiff had offered him several alcoholic drinks on the job. This information, which Plaintiff alleges was false, was relayed to S.D. Warren, resulting in Plaintiff's discharge along with eleven other S.D. Warren employees accused of possession or use of illegal drugs on the job. A television news report later stated that twelve unnamed S.D. Warren employees had been discharged for the possession or use of illegal drugs on the job; Plaintiff alleges that some members of the community understood this report to mean that his discharge was drug related.

Plaintiff brought this action in state court under 42 U.S.C. § 1983 and various provisions of Maine tort law; Defendants removed the case to this Court based on the assertion of the federal claim. Plaintiff's section 1983 claim alleges that Defendants agreed to deprive and did deprive him of a property interest in continuing employment and a liberty interest in future employment in the paper industry without affording him procedural due process of law. Specifically, Plaintiff claims that he should have been given a hearing before his discharge. In order to succeed on this claim, Plaintiff must demonstrate that Defendants, acting under color of state law, deprived him of liberty and property without due process of law, and that this action constituted state action subject to the fourteenth amendment.

■ It is undisputed that only the S.D. Warren Defendants, and not the State Police Defendants, had the authority to discharge Plaintiff. And it is clear that the discharge itself lies at the heart of both Plaintiff's property and liberty claims; the discharge is what allegedly deprived him of his property interest in continuing employment, and the discharge could provide the additional alteration of a right or status necessary to convert a mere injury to reputation into a deprivation of liberty. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Laureano-Agosto v. Garcia-Caraballo,* 731 F.2d 101, 104 (1st Cir.1984). It follows that, at a minimum, the action of the S.D. Warren Defendants must be characterized as state action in order for Plaintiff to succeed on a section 1983 claim against any of the Defendants. Although the materials submitted by Plaintiff in an effort to meet this burden constitute a virtually impenetrable thicket of poorly articulated and poorly supported theories, this much is clear: Plaintiff cannot show that the S.D. Warren Defendants' action was state action.

In *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), the Supreme Court articulated a two-pronged test for determining whether

the conduct allegedly causing the deprivation of a federal right is fairly attributable to the state.

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a State actor. This may be because he is a State official, because he has acted together with or has obtained significant aid from State officials, or because his conduct is otherwise chargeable to the State.

*Lugar*, 457 U.S. at 937, 102 S.Ct. at 2753. The court in *Lugar* reiterated that " '[o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance.' " *Id.* at 939, 102 S.Ct. at 2755 (quoting *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961)). Nevertheless, the question whether conduct is fairly attributable to the state must be considered a question of law. *Cf. Downs v. Sawtelle*, 574 F.2d 1, 6–10 (1st Cir.) (treating question as one of law), *cert. denied*, 439 U.S. 910, 99 S.Ct. 278, 58 L.Ed.2d 255 (1978).

Regarding the first prong of the *Lugar* test, Plaintiff does not argue that the deprivation was caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state. Instead, Plaintiff reads *Lugar*'s first prong as requiring only that "the deprivation must be caused ... by a person for whom the State is responsible," and Plaintiff asserts that that standard is met here. But Plaintiff's interpretation of the first prong ignores the second prong, which requires that "the party charged with the deprivation must be a person who may fairly be said to be a State actor." *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2754. This Court perceives no difference between "a person for whom the State is responsible" and "a person who may fairly be said to be a state actor." Plaintiff's reading of *Lu-*

*gar's* first prong thus renders the second prong redundant.

The better reading of the first prong of *Lugar* is that the deprivation must be caused by the exercise of some right or privilege created by the state, created by a rule of conduct imposed by the state, or created by a rule of conduct imposed by a person for whom the state is responsible. And the deprivation in this case does not meet that standard; Plaintiff's discharge was caused by the exercise of S.D. Warren's right or privilege under the collective bargaining agreement, which agreement was created entirely by private parties. Plaintiff thus fails the first prong of the *Lugar* test.

Plaintiff also fails to meet his burden under the second prong of *Lugar*. Plaintiff argues that the S.D. Warren Defendants may fairly be characterized as state actors because they acted together with or obtained significant aid from the State Police Defendants. Although the two groups of defendants unquestionably cooperated in the planning and execution of the undercover operation itself, and it is undisputed that Plaintiff was discharged based on information provided by the State Police Defendants, the decision to discharge itself was wholly within the province of the S.D. Warren Defendants. Even assuming *arguendo* that the State Police Defendants knew that providing information might or would result in Plaintiff's discharge, that cause and effect relationship was a creation of the private, S.D. Warren Defendants rather than the State Police Defendants. An agreement with the state to do what a private person already has the legal authority to do simply does not, by itself, transform the private action into state action. Nor is there any additional element—whether regulatory involvement, financial interdependence, state compulsion, performance of a public function, or any other sort of interdependence—that in other cases has made private action fairly attributable to the state.

The cases relied upon by Plaintiff are inapposite.[1] *Lugar* involved a private person invoking the aid of state officials to take advantage of state-created prejudgment attachment procedures; the court held that "a private party's joint participation with State officials in the seizure of disputed property is sufficient to characterize that party as a 'State actor'...." *Lugar,* 457 U.S. at 941, 102 S.Ct. at 2756. There is no such seizure here; nor does Plaintiff's incantation of the phrase "joint participation" advance his case, given the complete absence of any evidence that the State Police Defendants participated in the actual decision to discharge Plaintiff.

*D'Amario v. Providence Civic Center Auth.,* 783 F.2d 1 (1st Cir.1986), involved public civic center employees *enforcing* a "no camera" rule that had been incorporated into purely private contracts between concert promoters and performing artists. Here, in contrast, the State Police Defendants did not enforce the collective bargaining agreement or any other private rule of conduct; they merely reported Plaintiff's activities to the S.D. Warren Defendants, who decided that those activities violated the collective bargaining agreement and discharged Plaintiff accordingly. Moreover, while the First Circuit in *D'Amario* found that the state's involvement in enforcing the private rule constituted state action, *id.* at 3–4, the court said nothing whatsoever about whether the promoters, artists, or any other private parties were state actors or whether their conduct was fairly attributable to the state. *D'Amario* thus does nothing to help Plaintiff establish that the S.D. Warren Defendants are state actors or that their action is state action.

*Gerena v. Puerto Rico Legal Services, Inc.,* 697 F.2d 447 (1st Cir.1983), discusses a number of tests for determining whether a person is a state actor; Plaintiff apparently relies on that portion of the decision that discusses the "symbiotic relationship" test established in *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). Under that test,

actions of a private person are attributable to the state if the state "has so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity...." *Burton,* 365 U.S. at 725, 81 S.Ct. at 862; *Gerena,* 697 F.2d at 451. "Under such circumstances plaintiff need not show how the government was particularly involved in the challenged action. Rather, the government is charged with all the actions of the private party." *Gerena,* 697 F.2d at 451.

> In *Burton* the critical facts were that a private restaurant that refused to serve blacks was located in a public facility and rent from the restaurant helped support the public facility. Most importantly, the profits the restaurant earned through discrimination were indispensable elements in the financial success of the government agency.

*Gerena,* 697 F.2d at 451 (citing *Burton,* 365 U.S. at 724, 81 S.Ct. at 861). In *Gerena,* in contrast, Puerto Rico Legal Services (PRLS), although almost entirely government-funded, was not a government actor because the financial success of the government was unconnected with PRLS and because the government had taken steps to ensure the autonomy of PRLS. The decision of PRLS to discharge one of its attorneys thus was not government action. Similarly, in this case, although S.D. Warren paid the costs of the undercover operation, the financial success of the State Police was in no way dependent on S.D. Warren, nor is there the slightest evidence that the State Police Defendants ever encroached on the S.D. Warren Defendants' autonomy in hiring or firing employees. Absent such interdependence, the state cannot be charged with the actions of the S.D. Warren Defendants under *Burton* and *Gerena.*

*Downs v. Sawtelle,* 574 F.2d 1 (1st Cir.), *cert. denied,* 439 U.S. 910, 99 S.Ct. 278, 58 L.Ed.2d 255 (1978), is similarly unavailing to Plaintiff. There, the First Circuit found

---

**1.** Because Plaintiff's counsel has failed to organize his treatment of these cases into even a minimally coherent argument, the Court will simply distinguish these cases in the order in which Plaintiff's counsel cites them.

that a community hospital was a state actor where the hospital received at least thirty percent of its budget from the state, it was subject to significant governmental regulation, its board of directors was appointed by town officials, its profits went to the town, and if it dissolved its assets would revert to the town. The numerous distinctions between the hospital in *Downs* and the S.D. Warren Defendants here are too obvious to merit discussion.

Relying on *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir.1979), *rev'd in part on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (*per curiam*), Plaintiff argues that the lack of state involvement in Plaintiff's actual discharge is irrelevant, because the State Police Defendants "shared the general conspiratorial objective." But Plaintiff never explains what this general conspiratorial objective was. Even accepting Plaintiff's allegation that there was an agreement to induce violations of the collective bargaining agreement, Plaintiff does not demonstrate that this objective was illegal or wrongful as to him, and an agreement to do that which is legal is not a conspiracy.

In *Howerton v. Gabica*, 708 F.2d 380 (9th Cir.1983), the court found that landlords had acted under color of state law by having policemen be present and participate in a summary eviction. The court did not, however, find the landlords' action to be fairly attributable to the state; in other words, it found that the private persons had acted under color of state law, but did not determine their action to be state action. *Id.* at 382–83 & n. 5. The two concepts are not identical, *Lugar*, 457 U.S. at 935 & n. 18, 102 S.Ct. at 2752–53 & n. 18, and Plaintiff here must show both. In order to succeed on a section 1983 claim, Plaintiff must show that the S.D. Warren Defendants acted under color of state law; in order to establish the predicate constitutional violation for his section 1983 claim, Plaintiff must show that the S.D. Warren Defendants' action was state action and thus subject to the strictures of the fourteenth amendment. *Howerton* does not advance Plaintiff's argument on either point. First, the State Police Defendants did not participate in the S.D. Warren Defendants' discharge of Plaintiff, as the policemen in *Howerton* participated in the private landlords' efforts to evict their tenant, and thus Plaintiff's discharge was not under color of state law. Second, *Howerton* does nothing to establish that the S.D. Warren Defendants' action was state action.

*Colon v. Lomelo*, 575 F.Supp. 664 (S.D. Fla.1983), is distinguishable on identical grounds. In *Colon*, public officials told the plaintiff's private employer that the plaintiff was dishonest, causing the plaintiff's discharge; the court found the public officials to have acted under color of state law, but said nothing about whether the private employer acted under color of state law or whether that employer's action was state action. *Colon* thus does nothing to advance Plaintiff's argument that the S.D. Warren Defendants acted under color of state law or that their action was state action.

*Dobyns v. E–Systems, Inc.*, 667 F.2d 1219 (5th Cir.1982), involved a private employer discharging its employees without a hearing. The employer was assisting the performance of the United States government's peacekeeping function in the Sinai Peninsula by constructing and operating an early warning surveillance system; the Fifth Circuit found that the employer's action was government action under both the "public function" and "symbiotic relationship" tests. *Id.* at 1225–28. Needless to say, the status of the S.D. Warren Defendants is factually distinguishable.

Plaintiff has thus failed to show that the action of the S.D. Warren Defendants in discharging Plaintiff was state action. It follows that whatever deprivation of property and/or liberty Plaintiff may have suffered as a result of that discharge was not subject to the requirements of the due process clause of the fourteenth amendment. Summary judgment for all Defendants on Plaintiff's section 1983 claim is therefore appropriate.

## II. DISCOVERY SANCTIONS

■ The Court in its April 9, 1987 Order in this action found that Plaintiff's answers

to certain interrogatories propounded by the State Police Defendants were unjustifiably untimely and inadequate and that Plaintiff's objections to those interrogatories were both untimely and without merit. The Court ordered Plaintiff to make further answers to those interrogatories within ten days. The State Police Defendants, having received those further answers and asserting that they are still inadequate, now move, pursuant to Fed.R.Civ.P. 37(b)(2)(C), to dismiss all of Plaintiff's claims against them.

The Court agrees with the State Police Defendants that many of the further answers are still woefully inadequate. They are replete with vague references to entire depositions, sets of interrogatory answers, previously filed memoranda, and affidavits, without any specificity as to what portions of the referenced materials are relevant. And they repeatedly lump together the individual Defendants' actions into a single, rambling narrative, without any attempt to respond to the interrogatories' requests for specific information regarding each Defendant. The answers severely prejudice the State Police Defendants in their efforts to prepare for trial because they make it well-nigh impossible for the Defendants or this Court to delineate the factual basis of Plaintiff's claims. Moreover, the answers are in manifest disregard of the spirit of this Court's April 9 Order, which was designed to dispose of outstanding discovery disputes necessary to the resolution of Defendants' motions for summary judgment. Plaintiff has had ample opportunity to respond adequately to the State Police Defendants' interrogatories, and advances no reason as to why he deserves another chance to do so. This litigation is nearly three years old; any additional delay to accommodate Plaintiff is simply not warranted.

Nevertheless, dismissal is a harsh, ultimate sanction. And the Court has already decided, in the April 9 Order, to hold a hearing to determine whether monetary sanctions should be imposed in connection with Plaintiff's previous answers to these interrogatories. The Court therefore determines that the most appropriate further sanction is to strike those allegations of Plaintiff's complaint against the State Police Defendants (but not those of the identical complaint against the S.D. Warren Defendants) to which the inadequately-answered interrogatories relate.[2] *See Commonwealth of Puerto Rico v. SS ZOE COLOCOTRONI,* 628 F.2d 652, 665–66 (1st Cir.1980) (holding that district court did not abuse its discretion by striking pleadings where a party's conduct in discovery materially prejudiced the other party's trial preparation and the court's legitimate efforts to keep a protracted lawsuit moving forward), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1350, 67 L.Ed.2d 336 (1981); 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2289 & n. 66 (1970 & Supp. 1986) (collecting cases). These interrogatories and the corresponding allegations are as follows:

| Interrogatory | Allegation to Be Stricken |
| --- | --- |
| 5–11 | Complaint, ¶12 |
| 13–20 | Complaint, ¶13 |
| 30 | Complaint, ¶19's allegation that Defendant Berry made repeated attempts to induce, solicit, or encourage employees of Defendant S.D. Warren to violate the collective bargaining agreement |
| 33–35 | Complaint, ¶20's allegation that Defendants Berry, Auger, and Snow orally and by other means disclosed information to Defendants Mahlia, Maskewitz, Reiche, and Roehner |

2. The allegations are to be stricken both from the count in which they first appear and from any other count(s) into which they are incorporated by reference. The Court recognizes that the effect of these sanctions may approach dismissal in severity of effect, but adopts this approach in order to tailor the sanctions most closely to Plaintiff's conduct in inadequately complying with the Court's April 9 Order.

| Interrogatory | Allegation to Be Stricken |
|---|---|
| 38–39 | Complaint, ¶26's allegation of a violation of Defendant Berry's oath of office and of the laws of Maine |
| 40 | Complaint, ¶29 |
| 41, 42 | Complaint, ¶30's allegations that Defendant Berry made knowing and false disclosures to Defendant S.D. Warren and that Defendant Stilphen approved of these disclosures |
| 43 | Complaint, ¶34's allegation that with the knowledge and consent of Defendants Berry, Auger, Snow, and Stilphen, the S.D. Warren Defendants released to the local media a report that Plaintiff had been summarily terminated for drug use |
| 46 | Complaint, ¶¶42's and 45's allegation that Plaintiff was portrayed in a false and negative light and has become an object of ridicule |
| 47, 48 | Complaint, ¶50 |
| 51–59 | Complaint, ¶52's allegations that Defendants, Berry, Auger, and Snow acted with malice and without justification and encouraged and induced S.D. Warren to summarily discharge Plaintiff |
| 60–63 | Complaint, ¶58 |
| 65 | Any claim for damages not outlined in the answers to interrogatories 64 and 66 [3] |

## III. CONTINUED EXERCISE OF PENDENT JURISDICTION

■ This case was removed from the Superior Court for Cumberland County pursuant to 28 U.S.C. § 1441, based on Plaintiff's assertion of a federal (section 1983) claim. Because the Court grants Defendants' motions for summary judgment on that claim, the Court is obliged to consider whether the continued exercise of pendent jurisdiction over Plaintiff's state law claims is appropriate.

In *UMW v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court declared that the exercise of pendent jurisdiction is discretionary with the court and that the district court, in exercising this discretion, should give due attention to avoiding needless decisions of state law. *See id.* at 726, 86 S.Ct. at 1139. The Court also declared that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* Although this latter proposition is not always strictly adhered to, *see* 13B C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3567.1 and nn. 20–21 (1984), the question whether to exer-

cise pendent jurisdiction remains open throughout the litigation. "[R]ecognition of a federal court's wide latitude to decide ancillary questions of state law does not imply that it must tolerate a litigant's effort to impose upon it what is in effect only a state law case." *UMW v. Gibbs*, 383 U.S. at 727, 86 S.Ct. at 1139–40.

In this case it appears very possible that questions of state law will arise regarding the psychotherapist-patient privilege and various provisions of Maine tort law. Under these circumstances, the Court concludes that the continued exercise of pendent jurisdiction is unwarranted and that a remand to the Superior Court for Cumberland County is more appropriate than outright dismissal of Plaintiff's remaining claims. *See* 14A C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3739 & n. 26 (2d ed. 1985 & Supp.1986) (stating that decision to remand after elimination of basis for removal is discretionary with the court). The remand will occur after the Court holds the hearing on discovery sanctions pursuant to paragraphs 3, 7, 9, and 10 of the Court's April 9 Order and enters an appropriate order.

**3.** The Court also finds that the answers to interrogatories 4 and 67 are inexcusably inadequate but that appropriate sanctions—for example, the preclusion of the use of certain witnesses—is better left to the state court to which this case will be remanded. *See infra.*

## IV. ORDER

It is therefore ORDERED:

(1) That Defendants' Motions for Summary Judgment on Count I of Plaintiff's Complaint be, and they hereby are, GRANTED;

(2) That the allegations of Plaintiff's Complaint against the S.D. Warren Defendants listed in Part II of the above Memorandum of Decision are STRICKEN; and

(3) That the Clerk will schedule a hearing on the discovery sanctions issue as promptly as the Court's calendar will permit.