Joseph NUZZO, Plaintiff,

v.

NORTHWEST AIRLINES, INC., Defendant.

Civ. A. No. 94–12048–PBS.

United States District Court, D. Massachusetts.

May 23, 1995.

John C. McBride, McBride, Wheeler & Widegren, Boston, MA, for plaintiff.

Barry A. Guryan, Eckert, Seamans, Cherin & Mellott, Boston, MA, for defendant.

MEMORANDUM OF DECISION AND ORDER

SARIS, District Judge.

#### INTRODUCTION

In this diversity action, Plaintiff Joseph Nuzzo claims that his discharge by defendant

---

Northwest Airlines, Inc., violated the Massachusetts Civil Rights Act, Mass.Gen.L. ch. 12, § 11I, because it came in retaliation for his refusal to testify against himself in an internal company investigation into conduct which was the subject of a grand jury proceeding. Northwest Airlines has filed a motion to dismiss, or alternatively, for summary judgment, on the ground that plaintiff's civil rights claim is pre-empted, and that no conduct of the company violated the Fifth Amendment. After hearing, the Court *ALLOWS* the motion for summary judgment.

## BACKGROUND

### 1. *Facts*

Because both Northwest Airlines and Nuzzo have submitted affidavits, the Court evaluates this motion under the summary judgment standard. Based on these affidavits, the Court treats the following facts as undisputed.

Nuzzo was employed by Northwest Airlines as an equipment serviceman on a baggage ramp at Logan Airport. He was discharged on September 5, 1989 for threatening and harassing behavior. In settlement of his grievance, he was brought back as a probationary employee on January 19, 1990 for 36 months, under the terms of a Last Chance Agreement, which provided that any violation of the company work rules would result in discharge, even for the most minor infraction.

On August 14, 1992, while Nuzzo was still a probationary employee, the Massachusetts State Police and Massport Authorities confiscated plaintiff's airport identification card. Without an identification card, no employee could access the ramp where Nuzzo was assigned to work. Based on the card revocation, Nuzzo was placed on a thirty day unpaid leave of absence. Defendant informed plaintiff that if he did not produce a valid ID within 30 days he would be considered as having resigned. After 30 days elapsed, plaintiff was asked by his supervisor to explain his attempts to recover his ID by September 28. When this deadline too passed, plaintiff's supervisor informed plaintiff's attorney that plaintiff would be required to attend a "formal interview" on September 30 to answer questions regarding allegations that Nuzzo had been involved in the theft of United States mail and/or credit cards taken from United States mail which was entrusted to Northwest.

Nuzzo was the target of a federal grand jury sitting in the United States District Court for the District of Massachusetts. The grand jury was investigating the theft of a large number of credit cards by Northwest Airlines employees. The office of the United States Attorney was seeking permission from the United States Department of Justice to indict Nuzzo for racketeering violations. Nuzzo retained defense attorney John McBride.

Northwest Airlines lawyers informed McBride that they wished to depose Nuzzo and question him regarding his knowledge of the thefts at Northwest Airlines. McBride informed defendant's counsel that because Nuzzo was the target of a grand jury investigation, he would not allow his client to give a statement. McBride advised his client "to interpose his Fifth Amendment privilege against self-incrimination."

Plaintiff did not attend this meeting on advice of counsel. On October 1, plaintiff was informed that he was being terminated for failure to respond to his supervisor's many requests that he cooperate with the company's investigation and directives, in violation of the company's work rules 1, 10 and 11 [1] and the Last Chance Agreement, which required "strict compliance" with all company rules.

At the time of Nuzzo's October 1, 1992 discharge, his employment with Northwest was governed by a collective bargaining agreement between Northwest and the International Association of Machinists and Aerospace Workers, District Lodge 143. By

---

1. Rule 1 provides that failure to cooperate with a company investigation is an infraction which would justify "immediate discharge." Rule 10 provides: "It is a basic requirement of your job that you cooperate fully with the company in any investigation concerning your conduct or the conduct of other employees." Rule 11 requires an employee to obey the directions and orders of the company.

the terms of the collective bargaining agreement in force, discharge-related disputes are resolved by an arbitration board, pursuant to the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq.

The union grieved the discharge. On April 8, 1994, after hearing, the System Board of Adjustment upheld plaintiff's discharge. The Board noted:

"Although he did not expressly raise the constitutional issue, grievant's position was analogous to exercising his right against self-incrimination. This Board need not decide if the right against self-incrimination is present in System Board of Adjustment hearings or Company investigations because, as discussed earlier, this case turns exclusively on the proper interpretation and application of the Last Chance Agreement."

It concluded:

"While this matter may have been related to a federal criminal probe the mere existence of a federal inquiry is an insufficient excuse for staying away from a Company investigation."

Plaintiff filed this action in state court seeking compensatory damage and equitable relief under the state civil rights law, and defendant removed it to federal court, pursuant to 28 U.S.C. § 1441. This court denied plaintiff's request for a preliminary injunction.

## DISCUSSION

### 1. Summary Judgment Standard

A motion for summary judgment must be granted if:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). "It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law." In re Varrasso, 37 F.3d 760, 762 (1st Cir.1994) (citing cases).

"To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." Rogers v. Fair, 902 F.2d 140, 143 (1st Cir.1990). If this is accomplished, the burden then "shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the [nonmoving party]." Id. (citations omitted). The nonmovant cannot simply rest upon mere allegations. Id. Instead, the nonmoving party must adduce specific, provable facts which establish that there is a triable issue. Id. Rule 56(e) "requires nonmovants to submit evidence that would be admissible at trial to oppose properly submitted motions for summary judgment." FDIC v. Fonseca, 795 F.2d 1102, 1110 (1st Cir.1986). "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" Rogers, supra (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)).

### 2. Preemption Analysis

The preemption analysis applicable here, under the RLA, is the same as the one developed under the Labor Management Relations Act, 29 U.S.C. § 141 et seq. See O'Brien v. Consolidated Rail Corp., 972 F.2d 1, 3 (1st Cir.1992), cert. denied, —— U.S. ——, 113 S.Ct. 980, 122 L.Ed.2d 134 (1993). The key question is whether the state law claim presented " 'requires the interpretation of a collective bargaining agreement.' " Jackson v. Liquid Carbonic Corp., 863 F.2d 111, 122 (1st Cir.1988) (quoting Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 408 n. 8, 108 S.Ct. 1877, 1883 n. 8, 100 L.Ed.2d 410 (1988)).

The Supreme Court set forth the rationale for preempting state law claims that require interpretation of a collective bargaining agreement:

[T]he subject matter of § 301 'is peculiarly one that calls for uniform law.' ... The possibility that individual contract terms might have different meanings under state

and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult.... Once the collective bargain was made, the possibility of conflicting substantive interpretation under competing legal systems would tend to stimulate and prolong disputes as to its interpretation.

*Teamsters v. Lucas Flour,* 369 U.S. 95, 103–04, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962) (footnotes omitted). In order to create a "uniform law," the federal courts are authorized "to fashion a body of federal law" to apply to controversies under collective bargaining agreements. *Lingle,* 486 U.S. at 403, 108 S.Ct. at 1880, *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957).

"Of course, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 1914, 85 L.Ed.2d 206 (1985) (state tort action for breach of the duty of good faith for mishandling of insurance claim by union was pre-empted where collective bargaining agreement provided for payment of insurance benefits and under state law "the tort intrinsically relates to the nature and existence of the contract"). The RLA does not preempt "state rules that proscribe conduct, or establish rights and obligations, *independent* of a labor contract." *Id.* at 212, 105 S.Ct. at 1912 (emphasis added). "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim [citation omitted] or dismissed as pre-empted by federal labor

contract law." *Id.* at 220, 105 S.Ct. at 1916. *Compare United Steelworkers of America v. Rawson,* 495 U.S. 362, 363–66, 110 S.Ct. 1904, 1907, 109 L.Ed.2d 362 (1990) (claim against union under § 301 claiming negligent failure to conduct mine/safety inspection was pre-empted where duty arose out of collective bargaining agreement, not a duty of reasonable care owed to everyone in society).

The preemption inquiry thus focuses on whether the state law claims are either "founded directly on rights created by collective-bargaining agreements" or are "substantially dependent" on analysis of such agreements; if they are, the claims are preempted. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 394, 107 S.Ct. 2425, 2431 (1987); *see also Jackson v. Liquid Carbonic Corp.,* 863 F.2d 111, 114 (1st Cir.1988), *cert. denied,* 490 U.S. 1107, 109 S.Ct. 3158, 104 L.Ed.2d 1012 (1989).

Applying the *Lingle* preemption analysis has different results depending on the state claim. *Compare Jackson,* 863 F.2d at 117 (state right to privacy claim preempted) *and O'Brien,* 972 F.2d at 5 (state physical disability discrimination claim preempted) *with McCall v. Chesapeake & Ohio Ry.,* 844 F.2d 294, 302 (6th Cir.) (state racial discrimination claim not preempted), *cert. denied,* 488 U.S. 879, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988) *and Lingle,* 486 U.S. 399, 406–07, 108 S.Ct. 1877, 1882 (1988) (state retaliatory discharge claim not preempted).

### 3. Civil Rights Claim

Plaintiff asserts that defendant by threats, intimidation or coercion, interfered or attempted to interfere with his state and federal constitutional right against self-incrimination when it discharged him for failing to answer questions during a company investigation concerning conduct that was the subject of a grand jury proceeding in violation of G.L. c. 12, § 11I.[2] Relief under the

---

2. Mass.General Laws ch. 12, § 11I (1992 ed.), reads in part as follows: "Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in [§ ]11H, may institute and prosecute in his own

name and on his own behalf a civil action for injunctive and other appropriate equitable relief...."

Mass.General Laws ch. 12, § 11H (1992 ed.), to which § 11I refers, reads in part as follows: "Whenever any person or persons, whether or not acting under color of law, interfere by

Massachusetts Civil Rights Act may be granted where the threat, intimidation, or coercion involves "any interference or attempted interference with any right secured by the Constitution or laws either of the United States or the Commonwealth." *Webster v. Motorola, Inc.,* 418 Mass. 425, 430, 637 N.E.2d 203, 206 (1994). In *Webster,* the Supreme Judicial Court rejected the claim that a private employer's conduct in requiring at-will employees to participate in a universal drug testing program constituted "threats, intimidation or coercion," stating: "No physical confrontation is alleged, and because the plaintiffs were employed 'at will,' they had no contract right to their positions." *Id. See also Bally v. Northeastern Univ.,* 403 Mass. 713, 719–20, 532 N.E.2d 49, 53 (1989) (discussing situations which can support a claim of "threats, intimidation, or coercion").

Here, there were no physical threats, intimidation or coercion. The only contractual right to the position arose out of the Last Chance Agreement which set forth the limited rights of plaintiff as a probationary employee. The only coercion alleged by plaintiff implicates a threat of discharge for failure to comply with company rules and cooperate with an investigation concerning his conduct as an employee. This claim is substantially dependent on the terms of the Last Chance and collective bargaining agreement and is therefore pre-empted.

### 4. *Self–Incrimination*

Even if the civil rights claim were not pre-empted, plaintiff has not established that Northwest Airlines violated any of his rights under state or federal law. The undisputed facts in the record establish that the investigation was private in nature, and therefore not subject to Fifth Amendment strictures. The Fifth Amendment "appl[ies] to actions of the federal government, not those of private individuals." *Cohen v. President and Fellows of Harvard College,* 568 F.Supp. 658, 659 (D.Mass.1983) (rejecting Fifth Amendment challenge to university employment de-

cision), *aff'd* 729 F.2d 59 (1st Cir.), *cert. denied,* 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984). *See also Flagg Bros. Inc. v. Brooks,* 436 U.S. 149, 156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978) ("Most rights secured by the Constitution are protected only against infringement by governments").

■ Plaintiff argues that plaintiff did have the absolute right to the privilege against self-incrimination in the company investigation because the plaintiff was the target of an investigation of fraud and theft by employees of Northwest Airlines, and Northwest Airlines was the victim of the crime. At oral argument, counsel pressed the point that any statements made to Northwest Airlines at a deposition would have been provided to the FBI. While that is a reasonable inference, the fact that a private company investigation may result in assistance to a government investigation does not trigger the Fifth Amendment protections.

■ In *Burdeau v. McDowell,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921), the Court held, over a Brandeis–Holmes dissent, that the use by law enforcement officials of evidence privately obtained by questionable means did not violate the defendant's rights under the Fourth Amendment or the Fifth Amendment self-incrimination clause. At least with respect to the Fourth Amendment, the Court's reasoning was sweeping: in the Court's view, the origin and history of the *Fourth* Amendment "clearly show[ed] that it was intended as a restraint upon the activities of a sovereign authority, and was not intended to be a limitation upon other than the governmental agencies." *Id.,* 256 U.S. at 475, 41 S.Ct. at 576. Reading *Burdeau,* the Second Circuit has held that the same is true of the Fifth Amendment self-incrimination clause. *See United States v. Solomon,* 509 F.2d 863, 868 (2nd Cir.1975) (no Fifth Amendment violation where stock exchange made inquiry in pursuance of its own interests, not as an agent of the government

---

threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the consti-

tution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action...."

agency). Even the "most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process clause." *Colorado v. Connelly*, 479 U.S. 157, 166, 107 S.Ct. 515, 521, 93 L.Ed.2d 473 (1986).

At oral argument, plaintiff suggested that federal agents would be present at the interview, and were poised to participate actively in the questioning. The short answer to this argument is there is no admissible evidence in the record to support that contention, or the suggestion that the company investigation was coordinated by the federal government or a subterfuge for obtaining information for the federal government. *Cf. Byars v. United States*, 273 U.S. 28, 33, 47 S.Ct. 248, 250, 71 L.Ed. 520 (1927) ("[A] search is a search by a federal official if he had a hand in it. . . . The decisive factor . . . is the actuality of a share by a federal official in the total enterprise of securing and selecting evidence by other than sanctioned means."); *Corngold v. United States*, 367 F.2d 1, 5–6 (9th Cir.1966) (Fourth Amendment applicable where federal customs agent joined actively in search conducted by airline agent). *See generally Fidelity Financial Corp. v. Federal Home Loan Bank*, 792 F.2d 1432, 1435 (9th Cir.1986) (A sufficiently close "nexus" between the government and a private entity to justify collapsing the public/private distinction may be established in two ways: either (a) "by showing that the government exercised such coercive power or such significant encouragement that it is responsible for the specific private conduct challenged, or ( [b] ) by showing that the private entity has exercised powers that are traditionally the exclusive prerogative of the government"), *cert. denied*, 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987).

Even under the standards applicable to public employees, Nuzzo has no Fifth Amendment rights under the state or federal constitution to decline to answer questions about his job performance. Northwest Airlines itself had compelling business reasons for determining whether its employees were stealing mail entrusted to it. The limits of the self-incrimination clause's protection against inquiries by public employers were defined by the Supreme Court in a pair of 1968 cases. A public employee may be terminated for refusing to answer questions "specifically, directly, and narrowly relating to the performance of his official duties," so long as he is not "required to waive his immunity with respect to the use of his answers or the fruits thereof in a criminal prosecution of himself." *Gardner v. Broderick*, 392 U.S. 273, 278, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082 (1968).

Moreover, public employees "subject themselves to dismissal if they refuse to account for their performance of their public trust, after proper proceedings, which do not involve an attempt to coerce them to relinquish their constitutional rights." *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation*, 392 U.S. 280, 285, 88 S.Ct. 1917, 1920, 20 L.Ed.2d 1089 (1968). Justice Harlan observed in concurrence that there is "in these opinions a procedural formula whereby . . . public officials may now be discharged . . . for refusing to divulge to appropriate authority information pertinent to the faithful performance of their offices." 392 U.S. at 285, 88 S.Ct. at 1920. For recent discussions of these cases and their progeny, see generally *Singer v. Maine*, 49 F.3d 837, 847 (1st Cir. 1995); *In re Grand Jury Subpoenas*, 40 F.3d 1096, 1101–04 (10th Cir.1994); *Carney v. Springfield*, 403 Mass. 604, 609, 532 N.E.2d 631, 634 (1988).

In this case, the matters into which the employer wished to inquire were manifestly work-related, and plaintiff was not coerced into relinquishing his Fifth Amendment rights.

In sum, this court concludes that plaintiff's discharge for failure to comply with orders to cooperate in a company investigation did not interfere with any contractual or constitutional rights under state or federal law.

### *ORDER*

For the foregoing reasons, defendant's motion to dismiss or, alternatively, for summary judgment (Docket # 5) is ***ALLOWED.***