Kathleen DOUGHERTY, Jo Ann Korda-siewicz, Arlene Schoeman, Individually and on behalf of all others similarly situated, Plaintiffs–Appellants,

v.

AMERICAN TELEPHONE AND TELEGRAPH COMPANY, AT & T Information Systems, Inc., and New York Telephone Company, Defendants–Appellees.

No. 492, Docket 89–7741.

United States Court of Appeals, Second Circuit.

Argued Jan. 4, 1990.

Decided May 1, 1990.

Krista A. Hughes, Buffalo, N.Y. (Richard J. Lippes, Allen, Lippes & Shonn, Buffalo, N.Y., and Jerry S. Cohen, Cohen, Milstein & Hausfeld, Washington, D.C., of counsel), for plaintiffs-appellants.

Stanley Schair, New York City (Michael I. Bernstein, Benetar Bernstein Schair & Stein, New York City, and Lawrence M. Joseph, American Tel. & Tel. Co., Berkeley Heights, N.J., of counsel), for defendants-appellees American Tel. & Tel. Co. and AT & T Information Systems, Inc.

Lon S. Bannett, New York Telephone Co., New York City, for defendant-appellee New York Telephone Co.

Before KEARSE and WINTER, Circuit Judges, and LEVAL,* District Judge.

WINTER, Circuit Judge:

Plaintiffs appeal from Judge Elfvin's decision granting summary judgment to defendants, their former employers. Because the plaintiffs' claims are governed by

* The Hon. Pierre N. Leval, United States District Judge for the Southern District of New York, sitting by designation.

Section 301 of the Labor Management Relations Act ("the LMRA"), 29 U.S.C. § 185 (1982), and because plaintiffs have failed to exhaust the grievance procedures of the relevant collective bargaining agreements, we affirm.

## BACKGROUND

The facts are undisputed. Prior to January 1, 1984, plaintiffs were employed by defendant New York Telephone Company ("Telco"), a telephone operating company then wholly owned by defendant American Telephone and Telegraph Company ("AT & T"). Plaintiffs' collective bargaining representatives were affiliates of the Telecommunications International Union ("TIU"), which had agreements with AT & T setting forth terms and conditions of employment, including provisions regarding layoffs, transfers, and reassignments. The agreements also contained broad grievance and arbitration clauses that provided the exclusive means for settling all disputes between employees and AT & T.[1]

In the early 1980's, antitrust litigation resulted in a settlement divesting AT & T of its telephone operating companies, including Telco. *See United States v. American Tel. & Tel. Co.*, 552 F.Supp. 131 (D.D.C.1982), *aff'd sub nom. Maryland v. United States*, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983). In anticipation of the reorganization, AT & T negotiated modification of its collective agreements with various unions, including TIU, regarding job assignment, transfer procedures, and the rights of employees who would be transferred. The modified agreement between AT & T and TIU provided, inter alia, for the continuation of employment rights and benefits as provided by existing collective bargaining agreements and for preferential rehire rights for employees laid off from a new AT & T organization for a period after transfer.[2]

On January 1, 1984, AT & T divested itself of Telco, and various transfers of employees ensued. Employee preference was one of several criteria used by AT & T in post-reorganization job assignments, and the plaintiffs indicated on employee preference forms their desire to transfer to a new AT & T subsidiary, American Telephone and Telegraph Information Systems, Inc. ("ATTIS"). Plaintiffs Dougherty and Kordasiewicz were thereafter transferred to an ATTIS office in Buffalo, New York. Plaintiff Schoeman, who had been employed in various downstate New York offices with Telco, was transferred to an ATTIS office in Jericho on Long Island.

In the two years following divestiture, ATTIS experienced a business reversal. ATTIS consolidated all residential operations at a facility in Pearl River, New York, and both the Jericho and Buffalo offices were closed, resulting in the layoff or transfer of all employees in those offices. Each of the plaintiffs was offered—but declined—continued employment at the Pearl River facility. Each of the plaintiffs was then laid off in accordance with the

1. The agreement applicable to plaintiffs Dougherty and Kordasiewicz provided as follows:
   The grievance procedure and where applicable the arbitration procedure as contained in this Agreement shall be the sole and exclusive means to be used by any employee or group of employees or by either the Company and its representatives or by the Union and its representatives for adjusting and settling any dispute or issue.
   The agreement applicable to plaintiff Schoeman was virtually identical, providing the "sole and exclusive means" for "adjusting and settling any question or issue."

2. The amended Memorandum of Agreement between AT & T and TIU was executed on April 5, 1982 and stated as follows:
   This amended Memorandum of Agreement is intended to set forth the rights and obligations of employees in the Bell System who are presently represented by TIU and who are transferred as a part of their work group or organization in connection with any corporate reorganization of the Bell System including, but not limited to (1) creation and establishment of new subsidiaries or affiliated entities of AT & T; (2) creation and establishment of any new separate entities by divestiture, sale, transfer, assignment or lease, which continue to perform or assume obligation to perform, any portion of the operations of any present Bell System company.
   This agreement is made in contemplation of corporate reorganization resulting from legislation (statute), regulatory order, court order, or otherwise.

procedures outlined in the collective bargaining agreements.

Plaintiffs instituted this action in New York state court in October 1986, alleging common-law fraud and negligent misrepresentation. The complaint asserted that the defendants fraudulently induced employees to transfer out of Telco and into ATTIS positions by, inter alia, failing to advise employees of plans for or possibilities of work force reductions and consolidations of offices. The defendants removed the action to federal court in November 1986 on the ground that plaintiffs' claims are governed by Section 301 of the LMRA. 29 U.S.C. § 185 (1982). Plaintiffs subsequently moved to remand the matter to state court, but the district court denied that motion, finding that plaintiffs' claims could not be adjudicated without reference to the agreements between TIU and the defendants.

Defendants then moved for summary judgment on the ground that the plaintiffs had failed to exhaust the grievance and arbitration procedures provided in their collective bargaining agreements. The district court granted the motion.

## DISCUSSION

■ Section 301 of the LMRA governs actions by an employee against an employer for breach of a collective bargaining agreement.[3] Before bringing such an action, the employee must exhaust grievance procedures provided by the relevant collective bargaining agreement. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976). Plaintiffs do not claim that they fall within any exception to the rule requiring exhaustion, *see Vaca v. Sipes*, 386 U.S. 171, 185–86, 87 S.Ct. 903, 914–15, 17 L.Ed.2d 842 (1967), and concede that they did not exhaust the pertinent grievance procedures. Plaintiffs argue instead that

they are asserting state-law tort claims independent of their rights under the collective bargaining agreements.

■ Although plaintiffs formulate their complaint as based on state tort law, that formulation is not binding upon us where rights and obligations under the pertinent collective agreement are inextricably involved in the underlying claim. The Supreme Court has held that the federal interest in uniform interpretation of collective bargaining agreements may preempt certain state-law tort actions. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 210–11, 105 S.Ct. 1904, 1910–11, 85 L.Ed.2d 206 (1985) (preemptive effect of Section 301 regarding contractual issues extends beyond suits alleging contract violations to suits alleging liability in tort); *see also Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962) (requiring application of uniform federal labor law in Section 301 disputes). In *Allis–Chalmers*, the Supreme Court held that Section 301 preempted an employee's state-law tort claim for breach of a duty to act in good faith in paying disability benefits. *See* 471 U.S. at 216–20, 105 S.Ct. at 1913–16. The Court indicated that contract interpretation was required because the applicable collective bargaining agreement may have provided or have precluded the relief the employee sought and because the state-law tort action would circumvent the arbitration procedures provided in that agreement. *Id.* at 218–20, 105 S.Ct. at 1911–16. Of course, not every state-law claim is preempted by Section 301, and rights and obligations that are truly independent of a collective bargaining agreement are enforceable. *See Allis–Chalmers*, 471 U.S. at 211–12, 105 S.Ct. at 1911–12. In *Lingle v. Norge Div. of Magic Chef, Inc.*, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), for example, the Su-

---

**3.** Section 301 provides in relevant part:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (1982). That section has been construed to permit individual employees to bring suit in federal court against employers. *See Smith v. Evening News Ass'n*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962).

preme Court held that a state-law action alleging retaliatory discharge for filing a workers' compensation claim was "independent" of the collective bargaining agreement and therefore was not preempted by federal law. *See id.* at 1882.

■ We conclude that plaintiffs' state-law claims here are not independent of the collective bargaining agreement. The gravamen of plaintiffs' complaint is that AT & T had various obligations to provide accurate information to employees about post-divestiture plans and projections relating to ATTIS's future. Such obligations, however, are inextricably intertwined with the collective agreement governing plaintiffs' employment relationship. In anticipation of transfers resulting from the divestiture—including transfers to ATTIS—AT & T and the TIU bargained over job assignment and transfer procedures and modified the collective agreement. Those modifications specifically contemplated layoffs while defining the employment rights of transferred employees. Plaintiffs' claims thus arise out of the precise events that caused AT & T and the TIU to enter into the negotiations leading to the modification of the collective agreement and concern the subject matter of those negotiations. Given the broad language of the pertinent grievance procedure, *see supra* note 1, and of the modified agreement, *see supra* note 2, and the liberal standards by which the arbitrability of disputes arising under collective agreements is determined, *see United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960) (stating presumption of arbitrability), plaintiffs' claims would clearly have been arbitrable. *See AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (presumption of arbitrability particularly applicable where arbitration clause is broad); *see also Chevron U.S.A., Inc. v. Consolidated Edison Co. of New York, Inc.,* 872 F.2d 534, 537–38 (2d Cir.1989) (discussing presumption of arbitrability); *McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.,* 858 F.2d 825, 832 (2d Cir.1988) (distinguishing a narrow arbitration clause

from the clause in *AT & T Technologies*); *Rochdale Village, Inc. v. Public Serv. Employees Union,* 605 F.2d 1290, 1294–95 (2d Cir.1979) (stating the strong presumption of arbitrability). Thus, as in *Allis–Chalmers,* 471 U.S. at 218–20, 105 S.Ct. at 1914–16, it is clear that the relief sought by plaintiffs may be provided, or precluded, by the modified collective agreement, and that a state-law tort action would impermissibly circumvent the arbitration procedures of that agreement.

Summary judgment was properly granted in light of the plaintiffs' conceded failure to exhaust the grievance procedures of the applicable collective bargaining agreements.

Affirmed.