Richard F. HEANING, Plaintiff,

v.

NYNEX—NEW YORK, also known as New York Telephone Company, Defendant.

No. 95 Civ. 8111 (SS).

United States District Court, S.D. New York.

Nov. 12, 1996.

Danilowitz & Giovanniello, Earle Giovanniello, New York City, for Plaintiff.

William R. Blane, White Plains, NY, for Defendant.

## OPINION AND ORDER

SOTOMAYOR, District Judge.

The original complaint in this action, filed in state court, advanced two claims against NYNEX Corporation ("NYNEX" or "the Company"), both of which related to plaintiff's discharge from the Company. First, plaintiff claimed that his employment was terminated without "just cause," and that NYNEX therefore violated the terms of a collective bargaining agreement (the "CBA") entered into between the Company and plaintiff's union. Second, plaintiff asserted that NYNEX breached a duty of confiden-

tiality owed to him by releasing certain of his personnel materials to state and federal authorities during the course of the Company's investigation into charges which culminated in plaintiff's discharge. Defendant removed the action to federal court on the ground that plaintiff's claims depended upon the interpretation of the CBA, and therefore were governed by § 301 of the Labor Management Relations Act (the "LMRA"). Defendant now moves for summary judgment on the ground that federal law bars the Court from considering plaintiff's claims because those claims already have been advanced and rejected in an arbitration initiated by plaintiff pursuant to the terms of the CBA.

In opposition to defendant's motion for summary judgment, plaintiff has submitted an affidavit to the Court alleging—for the first time—that he was inadequately represented by union officials during the course of the arbitration proceedings, thereby invalidating defendant's claim of estoppel. Plaintiff also requests leave to amend his complaint to add a cause of action, under 42 U.S.C. § 1983, charging defendant with conspiring with state and federal authorities in disclosing his personnel files in violation of plaintiff's privacy rights. Defendant maintains that plaintiff's most recent allegations are insufficient to avoid the binding effect of the arbitrator's decision, and that plaintiff's § 1983 claim is time barred. For the reasons to be discussed, I grant defendant's motion for summary judgment.

### BACKGROUND

NYNEX discharged plaintiff from his position as a service technician on August 31, 1992. The Company acted based upon an investigation which concluded that plaintiff had placed an offensive advertisement in Swinging Times magazine concerning his former supervisor.

During the course of NYNEX's investigation into plaintiff's alleged misconduct, Company officials reviewed and analyzed various materials removed from plaintiff's personnel files. For example, in March, 1989, the Company hired an expert to conduct a handwriting analysis comparing the application for the offensive advertisement with plaintiff's employment records. Further, plaintiff alleges that the Company released these same materials, on various occasions in 1988 and 1989, to investigators from the United States Postal Service, and to local police officials. According to the Complaint, NYNEX's handling of plaintiff's personnel files contravened the Company's confidentiality policies, and led ultimately to plaintiff's prosecution and conviction, on August 13 1992, for the crime of aggravated harassment in the second degree. That conviction subsequently was overturned. According to plaintiff, the decision on appeal reflected that there had been insufficient evidence to convict; according to defendant, the judgment was reversed "on the law" and not on the merits. (Heaning Aff. ¶ 14; Blane Aff. Ex. B at 3).

Plaintiff was a bargaining unit employee covered by the terms of the CBA between NYNEX and the Communications Workers of America, AFL–CIO, District One, Local 1104 (the "Union"). Following his discharge, and pursuant to the grievance and arbitration provisions set forth in the CBA, plaintiff pursued an arbitration to challenge the Company's conduct. In the arbitration, plaintiff argued that the Company discharged him without "just cause," in violation of the CBA. The arbitration took place in October, 1994, with plaintiff represented by Union counsel. In a written award dated March 10, 1995, the arbitrator determined that "[t]he Company's action in the discharge of Richard Heaning was with "just cause," and ruled in defendant's favor. (Blane Aff. Ex. B at 9). Article 12 of the CBA provides that an arbitration award "shall be final and binding." (Blane Aff. Ex. A at 32).

Without any reference to the arbitration proceedings or the arbitrator's award, plaintiff filed his Original Complaint dated August 9, 1995 in the Supreme Court of the State of New York, County of New York (the "Original Complaint"). Plaintiff's Original Complaint advanced two causes of action. First, plaintiff charged defendant with terminating him from his position with the Company without "just cause," thereby violating the terms of the CBA. (Original Comp. ¶ 7). Second, plaintiff claimed that the Company breached its duty "[u]nder the CBA and

defendant's Personnel Policies & Practices" to preserve the confidentiality of plaintiff's employee files. (Original Comp. ¶ 10).

Defendant removed the action to this Court on September 21, 1995, on the ground that the resolution of plaintiff's claims depends upon the interpretation of the CBA, and that such matters are governed by § 301 of the LMRA. On February 29, 1996, defendants moved for summary judgment on the ground that the LMRA preempts plaintiff's state law claims, and requires that this Court defer to the arbitrator's determination that NYNEX acted with "just cause," and that the Company's investigation was "reasonable."

In support of his Opposition to Defendant's Motion For Summary Judgment (the "Opposition"), plaintiff submitted an affidavit, dated March 29, 1996, sharply criticizing the competence and diligence of the Union attorneys who represented him during the arbitration—a matter plaintiff did not reference in his Original Complaint. According to these new allegations, plaintiff's Union attorneys behaved "unprofessionally" during the arbitration; at times refusing to respond to plaintiff's questions, and even referring to him as an "asshole" while speaking with others at the arbitration proceedings. (Heaning Aff. ¶ 18). Plaintiff also alleges that his Union attorneys failed to present persuasive evidence on his behalf, failed to advance a number of credible arguments, and did not adequately cross-examine witnesses. For instance, plaintiff's supervisor pursued a civil claim against plaintiff which ultimately was dismissed; plaintiff's Union attorneys rejected plaintiff's advice that they cross-examine the supervisor as to the possibility that her allegations were motivated by the prospect of a civil recovery. (Heaning Aff. ¶ 20). Further, the Union attorneys allegedly excluded plaintiff from a settlement conference and refused to discuss with plaintiff what transpired during their meeting with the Company's attorneys. (Heaning Aff. ¶ 23). In his affidavit, plaintiff also reveals that he filed a charge with the National Labor Relations Board (the "Board") against the Union for its alleged breach of its duty of fair representation, but that the Board declined to pursue the matter. (Heaning Aff. ¶ 22). In sum, plaintiff purports to have been "very unhappy" with his Union representation during the arbitration. (Opposition at 5).

Plaintiff also has moved the Court for leave to file an amended Complaint. Plaintiff's proposed amended Complaint is largely identical to his Original Complaint, except that it adds a § 1983 cause of action against defendant. Plaintiff charges that, "[b]etween September 1988 and March 1989," defendant conspired with various government officials for purposes of "depriv[ing] plaintiff of his rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution." (Amended Comp. ¶ 6). Specifically, by circulating plaintiff's personnel materials to state and federal authorities, defendant allegedly violated plaintiff's "reasonable expectation of privacy" in those materials. (Amended Comp. ¶ 7(a)).

Defendant responds to plaintiff's new allegations and to plaintiff's new claim with two basic arguments. First, with respect to plaintiff's allegations concerning the adequacy of the Union attorneys during arbitration, defendant argues that these new allegations recast plaintiff's claim into a "hybrid § 301/ fair representation" cause of action. This is an action distinct from the "unjust discharge" claim plaintiff initially brought in state court. Therefore, plaintiff's new allegations should not be related back to the filing of the Original Complaint, and because the statute of limitations applicable to hybrid claims is six months, defendant's argument continues, plaintiff is time barred from asserting his new "unfair representation" allegations. Second, as to plaintiff's § 1983 claim, defendant contends that this claim accrued in 1988 or 1989, the time in which defendant allegedly circulated plaintiff's personnel materials to state and federal investigators. Thus, even if this claim relates back to the time of the filing of the Original Complaint on August 9, 1995, the three year statute of limitations applicable to § 1983 claims has expired and precludes plaintiff from making his proposed amendment. I agree with defendant's contentions.

## DISCUSSION

### A. § 301 Preemption

 "Section 301 of the LMRA governs actions by an employee against an employer for breach of a collective bargaining agreement." *Dougherty v. American Telephone and Telegraph, Co.*, 902 F.2d 201, 203 (2d Cir.1990). A plaintiff cannot escape § 301 preemption simply by formulating a claim as one arising under state tort law:

> if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is preempted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute.

*Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 405–06, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988); *Allis–Chalmers Corp v. Lueck*, 471 U.S. 202, 210, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985) ("If the policies that animate § 301 are to be given their proper range ... the pre-emptive effect of § 301 must extend beyond suits alleging contract violations."); *Dougherty*, 902 F.2d 201, 203 (2d Cir.1990) (holding that plaintiff's tort law "formulation is not binding upon [the Court] where rights and obligations under the pertinent collective agreement are inextricably involved in the underlying claim."). This is not to say that every state-law claim brought by a union employee is preempted by § 301: "rights and obligations that are truly independent of a collective bargaining agreement are enforceable." *Dougherty*, 902 F.2d at 203. However, "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as preempted by federal labor-contract law." *Allis–Chalmers*, 471 U.S. at 220, 105 S.Ct. at 1916 (citations omitted).

 Therefore, in order to determine whether plaintiff's claims for wrongful discharge and for breach of confidentiality are preempted by § 301, this Court must consider whether resolution of these matters is "substantially dependent" upon the terms of the CBA. *Id.* Under this standard, plaintiff's claim that he was discharged without "just cause"—a duty which plaintiff draws explicitly from the language of the CBA—is "indisputably" preempted by § 301 of the LMRA. *Paradis v. United Technologies*, 672 F.Supp. 67, 69 (D.Conn.1987); *see also Anderson v. Coca Cola Bottling Co.*, 772 F.Supp. 77, 81 (D.Conn.1991) ("The only 'just cause' provision that could apply to plaintiff's employment contract is contained in the collective bargaining agreement."). In fact, there is no dispute on this point; in his Opposition, plaintiff does not challenge defendant's position that the "unjust" discharge claim is preempted by § 301. A more difficult question—indeed, the contested question—arises with respect to plaintiff's breach of confidentiality claim.

 In his Opposition, plaintiff relies upon *Lingle* for the proposition that a state tort claim which can be resolved without reference to a collective bargaining agreement is not preempted under § 301. *See Lingle*, 486 U.S. at 411, 108 S.Ct. at 1884 (finding no preemption as to union employee's claim of retaliatory discharge). Plaintiff goes on to assert, without any reference to the specific allegations set forth in his Complaint, that his breach of confidentiality claim does not depend upon an interpretation of the CBA. Plaintiff's explanation of the governing legal standard is correct: where an employer allegedly breaches a duty which exists independently of any collective bargaining agreement, an action for the breach of that duty is not preempted under § 301 of the LMRA. *Id.* Plaintiff's assertion that he has advanced a claim which does not depend upon application of the CBA, however, is plainly wrong.

In both his original, and proposed amended complaints, plaintiff invokes "the CBA and defendant's Personnel Policies & Practices" as the source of the duty of confidentiality which the Company allegedly breached by releasing plaintiff's personnel materials to state and federal investigators. (Original Comp. ¶ 10; Amended Comp. ¶ 20). In his proposed amended complaint,

plaintiff refers the Court to Article 35 of the CBA—captioned "Inspection of Employee Records"—as a source of the duty of confidentiality which defendant allegedly breached. (Amended Comp. ¶ 8). Further, in the single passage of defendant's personnel policy which plaintiff excerpts in his Opposition, the Company expressly reserves the right to use and disclose personnel materials "in accordance with [its] collective bargaining obligations." (Opposition at 11). In sum, plaintiff repeatedly frames his breach of confidentiality claim with reference to the CBA and thereby undermines and explicitly contradicts his argument that his claim is not "substantially dependent" upon its application. *See McKee v. Transco Products, Inc.,* 874 F.2d 83, 85 (2d Cir. 1989) ("Because plaintiffs claimed that Transco breached a collective bargaining agreement, we agree with the district court that § 301 was properly pled, and that appellants cannot now transform this case into simply a state breach of contract claim."). Indeed, plaintiff has not proffered any argument suggesting a way in which to assess his claim that the Company breached its duties under "the CBA and the defendant's Personnel Policies & Practices" without applying the CBA. Thus, plaintiff's breach of confidentiality claim is preempted under federal law.

Plaintiff charges that defendant's alleged breach of its duty of confidentiality is actionable also as a claim for the "intentional infliction of emotional distress." (Amended Comp. ¶ 22). This cause of action requires a showing, *inter alia,* of "extreme and outrageous" conduct by defendant. *Conniff v. Dodd, Mead & Co.,* 593 F.Supp. 266, 269 (S.D.N.Y.1984). Because the allegedly outrageous conduct in this instance was defendant's breach of a duty arising under the CBA, preemption applies whether plaintiff formulates his claim as one for breach of contract or for the intentional infliction of emotional distress. *See McCormick v. AT & T Technologies, Inc.,* 934 F.2d 531, 536–37 (4th Cir.1991) ("Here, interpretation of the collective bargaining agreement is essential to determine whether and to what extent AT & T owed McCormick a duty concerning his work locker. If management owed him no duty and was entitled under the agreement to dispose of the contents of his locker in the manner it did, its actions *ipso facto* could not have been wrongful under state law."), *cert. denied,* 502 U.S. 1048, 112 S.Ct. 912, 116 L.Ed.2d 813 (1992); *Anderson,* 772 F.Supp. at 82 ("Plaintiff's tort claims arise out of work related disputes governed by the collective bargaining agreement."); *Dulay v. United Technologies Corp.,* 3:93–cv–2020(JAC), 1994 WL 362149, * 5 (D.Conn. June 10, 1994) (distinguishing claims for intentional and negligent infliction of emotional distress; a claim of intentional infliction of emotional distress requires the court "to determine whether the defendant's conduct exceeded the bounds of the collective bargaining agreement.").

The Court's ruling is consistent with decisions in several Circuits in which courts have preempted a variety of claims arising out of defendant corporations' alleged misconduct during the course of investigations culminating in challenged dismissals. *See, e.g., Willis v. Reynolds Metals Company,* 840 F.2d 254, 255 (4th Cir.1988) (preempting plaintiff employee's invasion of privacy claim where "the alleged wrong by [the employer] in the instant case directly dealt with its right pursuant to a collective bargaining agreement to conduct investigations into possible harassment of one employee by a co-worker"); *Scott v. Machinists Automotive Trades District Lodge No. 190 of Northern California,* 827 F.2d 589, 594 (9th Cir.1987) ("state tort claims for intentional infliction of emotional distress are preempted when they arise out of the employee's discharge or the conduct of the defendants in the investigatory proceedings leading up to the discharge."). As is the case here, such claims typically are intertwined with the defendant corporations' rights and obligations under the collective bargaining agreements which prescribe the appropriate bases for dismissal. *Id.* Thus, as precedent and logic dictate, I consider both plaintiff's unjust discharge claim, and plaintiff's breach of confidentiality claim, in accordance with federal law governing disputes arising under collective bargaining agreements.

B. "Hybrid § 301/Fair Representation" Allegations

Under federal law, courts ordinarily must defer to the judgment of arbitrators called upon to resolve disputes between employees and employers arising under collective bargaining agreements. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 163–64, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983) ("Ordinarily ... an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective-bargaining agreement. Subject to very limited judicial review, he will be bound by the result according to the finality provisions of the agreement.") (citations omitted). Under a narrow set of circumstances, however, an employee can proceed with a § 301 claim despite an earlier adverse ruling by an arbitrator:

> when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation ... an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceedings.

*Id.* at 164, 103 S.Ct. at 2290 (citations omitted); *see also Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1179 (7th Cir. 1993) ("the worker cannot prevail in his section 301 suit merely by showing that his grievance is a just one. That is, he cannot show just that the company violated the collective bargaining agreement. He must also show that ... the union violated its duty to represent all members of the bargaining unit fairly."); *see also Olguin v. Inspiration Consolidated Copper Co.*, 740 F.2d 1468, 1472 (9th Cir.1984) ("Collective bargaining agreements customarily provide for grievance and arbitration procedures, and unless an employee can show that he was not fairly represented by his union, grievance and arbitration is the employee's exclusive remedy for a breach of the agreement."). Because such a claim includes a challenge both to the propriety of the employee's discharge and to the adequacy of the employee's union representation, it is properly characterized as a "hy-

brid § 301/fair representation" claim. *See DelCostello*, 462 U.S. at 165, 103 S.Ct. at 2291.

Plaintiff's Original Complaint does not describe a hybrid claim; it describes a straight-forward breach of contract claim. Indeed, the Original Complaint never mentions the arbitration, and it never raises any allegation even hinting at a claim of "unfair representation." Instead, in his Original Complaint, plaintiff focuses exclusively upon the circumstances of his termination from the Company and purports to set forth state law causes of action for "unjust discharge" and "breach of duty." Thus, the claims which plaintiff describes in his Original Complaint are properly barred by the arbitrator's "final and binding" determination that both the plaintiff's discharge and the Company's related investigation were "reasonable."

For the first time, in the March 29, 1996 affidavit he submitted in support of his Opposition, plaintiff set forth several allegations of "unfair representation"—allegations which convert plaintiff's claim into a hybrid cause of action. *See McKee*, 874 F.2d at 86–87 (holding that a plaintiff cannot avoid having his claim treated as a "hybrid" simply by declining to characterize it as such in his complaint; the court is free to consider the true nature of the allegations advanced either in the pleadings or in supporting affidavits). Hybrid claims, however, carry a six month statute of limitations. *DelCostello*, 462 U.S. at 169, 103 S.Ct. at 2293. Plaintiff lost at arbitration on March 10, 1995; he filed his state court action on August 9, 1995; and he submitted his Opposition on March 27, 1996. Thus, unless plaintiff's new allegations can relate back to the filing of his Original Complaint, his effort to pursue a hybrid claim against the Company comes too late.

Rule 15 of the Federal Rules of Civil Procedure permits a party to amend its pleadings when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c)(2). "The main inquiry under Fed.R.Civ.P. 15(c) is whether adequate notice has been given to the oppos-

ing party 'by the general fact situation al-leged in the original pleading.' An amendment will not relate back when it sets forth a new set of operational facts; it can only make more specific what has already been alleged." *Pruiss v. Bosse,* 912 F.Supp. 104, 106 (S.D.N.Y.1996) (citations omitted); *see also Liebowitz v. Elsevier Science Ltd.,* 927 F.Supp. 688, 706 (S.D.N.Y.1996) (denying relation back, in part, because "the third amended complaint does not simply set forth more fully the same matter alleged in the original complaint."); *Holmes v. Greyhound Lines, Inc.,* 757 F.2d 1563, 1566 (5th Cir. 1985) ("when new or distinct conduct, transactions, or occurrences are alleged as grounds for recovery, there is no relation back, and recovery under the amended complaint is barred by limitations if it was untimely filed.").

■ Plaintiff's "hybrid § 301/fair representation" claim centers upon a set of facts—those concerning his representation during arbitration—that plaintiff did not raise in connection with the "straightforward breach-of-contract" claim he initially set forth:

> 'To prevail against either the Company or the union, employee-plaintiff must not only show that their discharge was contrary to contract but must also carry the burden of demonstrating breach of a duty by the Union.' The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both. The suit is thus not a straightforward breach-of-contract under § 301 ... but a hybrid § 301/fair representation claim ...

*DelCostello,* 462 U.S. at 165, 103 S.Ct. at 2291 (finding no state law analog for a hybrid claim, and borrowing the applicable six month limitations period from the National Labor Relations Act). Indeed, "the indispensable predicate for [a hybrid claim] is not a showing under traditional contract law that the discharge was a breach of the collective-bargaining agreement, but instead a demonstration that the Union breached its duty of fair representation." *See United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 62, 101 S.Ct. 1559, 1564, 67 L.Ed.2d 732 (1981); *see also Flanigan v. IBT, Truck Drivers Local*

*671,* 942 F.2d 824, 828 (2d Cir.1991) ("appellants were required in this hybrid section 301 action to prove that the Union breached its duty of fair representation before proceeding against [the defendant employer]."). Thus, plaintiff's new allegations shift the primary focus of this case from the propriety of his discharge in August 1992, to the adequacy of his Union counsel in connection with an arbitration held in October 1994. *Id.; see also Holmes,* 757 F.2d at 1566 (reasoning that an amended complaint setting forth a hybrid cause of action against an employer and a union "focused entirely upon allegations that the Union breached its duty of fair representation in several respects."). For purposes of Rule 15, then, plaintiff's allegations of unfair representation describe a new claim, arising out of a different "transaction, or occurrence," than was put into issue by his Original Complaint.

The Court's decision to deny relation back advances one of the primary purposes of any statute of limitations—that is, "to ensure fairness to defendants." *See Aslanidis v. United States Lines, Inc.,* 7 F.3d 1067, 1074 (2d Cir.1993); *see also DelCostello,* 462 U.S. at 168, 103 S.Ct. at 2292 (noting the federal interest in the "relatively rapid final resolution of labor disputes"). In his Original Complaint, plaintiff did not even mention his Union attorneys, the arbitration or the arbitrator's adverse decision; he provided defendant with no grounds to anticipate that it would become necessary to defend against hybrid allegations. *See Holmes,* 757 F.2d at 1566 ("In determining if an amended complaint relates back, this Court regards as 'critical' whether the opposing party was put on notice regarding the claim raised therein.") (citations omitted). Instead, by avoiding the issue, plaintiff made an effort at "artful pleading" designed to avoid federal preemption. *See Olguin,* 740 F.2d at 1472 ("employees frequently attempt to avoid federal law by basing their complaint on state law"). In so doing, plaintiff sought to subvert those interests advanced by the supremacy of federal law in the labor arena. *Id.; see also Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103, 82 S.Ct. 571, 577, 7 L.Ed.2d 593 (1962) ("The possibility that individual contract terms might have different meanings

under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements."). It was only when defendant complicated plaintiff's efforts, by invoking the arbitrator's decision, that plaintiff attempted to restructure his allegations to describe a "hybrid" § 301 claim which would not be barred under federal law. "Fairness" dictates against relation back in these circumstances; defendant should not have to respond to plaintiff's allegations simply to accommodate plaintiff in his attempt to resuscitate his claims after his initial strategy for avoiding preemption and for remaining in state court failed.

In support of relating his "unfair representation" allegations back to the Original Complaint, plaintiff relies upon *Spietz v. Kaiser Aluminum & Chemical Corp.*, 672 F.Supp. 1368 (W.D.Wash.1987). There, the Court permitted relation back between an unjust discharge claim brought solely against the plaintiff's employer, and a subsequent hybrid claim which included allegations of "unfair representation" and which added the plaintiff's union as a defendant. Despite invoking Rule 15 in support of its decision to permit relation back between these two claims, the *Spietz* Court offered no analysis of whether a hybrid claim arises out of the same "transaction or occurrence" as a claim for unjust discharge. Instead, the Court was satisfied simply that it "appear[ed]" that plaintiff's union received "some informal notice" of the action against it. *Id.* at 1371. In light of the unique nature of a hybrid claim, and in view of those fairness and expediency considerations which animate the applicable limitations period, this Court simply does not agree with such an approach. Moreover, this Court is not alone; the *Spietz* ruling is inconsistent with a recent decision, within this Circuit, addressing similar issues. *See White v. White Rose Food*, 930 F.Supp. 814 (E.D.N.Y.1996).

In *White*, the Court declined to permit relation back between a hybrid claim brought by plaintiff employees against their employer and their union, and an earlier claim by the plaintiffs against their employer alleging breach of a collective bargaining agreement.

*See White*, 930 F.Supp. 814. In their initial complaint, plaintiffs charged that their employer failed to distribute funds to the employees as required by the terms of a settlement agreement which had been negotiated with the employees' union. *Id.* at 817. In a third amended complaint, the employees attempted to add a claim against their union for its alleged failure to pursue the plaintiffs' grievances at arbitration. *Id.* at 818. The *White* Court stressed that an allegation of unfair representation was an "essential element to maintaining a Section 301 suit against the employer," and that "[n]o such claim was alleged in plaintiffs' original complaint." *Id.* at 819–820. The *White* Court went on to hold that, "in the absence of a timely allegation that the union acted in breach of its duty of fair representation," a claim against the employer under § 301 "could not be maintained." *Id.* at 823.

The Court finds further support for its ruling in a number of cases addressing a situation closely analogous to the one presently at issue. *See, e.g., Holmes*, 757 F.2d 1563; *Painter v. Mohawk Rubber Co.*, 636 F.Supp. 453 (W.D.Va.1986). Specifically, relation back is not permitted where plaintiff employees who initially file claims against their employers challenging the legal sufficiency of arbitration decisions against them subsequently reframe their claims as "hybrids," and add their unions as defendants. *Id.* Such amendments shift the focus of the employees' case away from the propriety of the arbitrator's decision upholding the plaintiff's discharge to the adequacy of the plaintiff's union representation. *See Holmes*, 757 F.2d at 1566. Like here, then, the initial claim against the employer is transformed by the introduction of allegations of "unfair representation" by the union. Thus, also as in this case, "there is no relation back." *Id.* at 1566.

For the reasons discussed, plaintiff's attempt to avoid the binding effect of the arbitrator's decision against him by recasting his breach of contract claim as a hybrid cause of action must be rejected as untimely. Accordingly, plaintiff's claims for unjust discharge and for the Company's alleged breach of its duty of confidentiality are dismissed.

## C. The § 1983 Claim

In his proposed amended complaint, plaintiff also invokes § 1983 as a basis for recovery against the Company. Specifically, plaintiff describes defendant's alleged cooperation with state and federal investigators, occurring "between September 1988 and March 1989," and charges that:

> By conspiring with federal and state authorities to seize and disclose plaintiff's personal records, defendant conspired to deny plaintiff his rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution to due process of law and to be free from unreasonable searches and seizures.

(Amended Comp. ¶ 9). The object of the alleged conspiracy, according to plaintiff, was to deny plaintiff his "reasonable expectation of privacy" in his personnel materials. *Id.* at ¶ 7(a).

■ Both sides agree, as they must, that "[t]he applicable statute of limitations for § 1983 actions arising in New York requires claims to be brought within three years." *Pinaud v. County of Suffolk,* 52 F.3d 1139, 1156 (2d Cir.1995). The parties do not agree, however, upon the appropriate date of accrual for plaintiff's § 1983 claim. Defendant maintains that plaintiff's claim accrued during the time that the Company revealed plaintiff's personnel materials to state and federal investigators—that is, "between September 1988 and March 1989." (Amended Comp. ¶ 7(a)). Plaintiff responds that his § 1983 action did not accrue either until he was convicted, on August 13, 1992, or until he was discharged from his position with the Company, on August 31, 1992.

■ An action accrues under § 1983 when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm. *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). The only "harm" cognizable under § 1983 is an intentional infringement of a "constitutionally or federally guaranteed right." *See Olsen v. Lane,* 832 F.Supp. 1525, 1527 (M.D.Fla.1993).

Here, as the excerpted portion of the proposed amended complaint demonstrates, plaintiff invokes his privacy rights as the source of his alleged injury. He claims that those rights were infringed by an unlawful "search and seizure," without "due process" of law. In other words, the harm plaintiff describes is an invasion of his "zone of privacy." *See Day v. Morgenthau,* 909 F.2d 75, 77 (2d Cir.1990).

Plaintiff's privacy was invaded neither by his dismissal nor by his conviction; plaintiff's privacy interest was compromised—if at all—when defendant revealed his personnel materials to federal investigators. *See Kaster v. Iowa,* 975 F.2d 1381, 1382 (8th Cir.1992) ("Kaster's cause of action arose when the state officials searched and seized his property, not when Kaster's state court action concluded.") (citations omitted); *Jacobs v. Village Of Tuckahoe, Local 456 International Brotherhood Of Teamsters,* 94 civ. 4888, 1996 WL 355376, *2 (S.D.N.Y. June 27, 1996) ("The invasion of plaintiff's privacy constituted the harm at issue. Therefore, the date of plaintiff's discharge is immaterial for tolling purposes."). According to the allegations in the Complaint, the intrusion into plaintiff's privacy occurred "between September 1988 and March 1989." (Amended Comp. ¶ 9). Further, in his pleadings, plaintiff confirms that he was on notice of the alleged invasion of his privacy during this same period of time. (Amended Comp. at ¶ 7(c) (alleging that, in late 1988, a United States postal inspector told plaintiff that the government had obtained plaintiff's employment records)). Plaintiff's § 1983 claim accrued, therefore, more than three years before he filed his complaint in 1995; specifically, accrual occurred in the late 1980's, when plaintiff became aware of the alleged intrusion into his "zone of privacy." *See Day,* 909 F.2d at 77; *see also Moore v. McDonald,* 30 F.3d 616, 620 (5th Cir.1994) (holding that claim as to an "allegedly unreasonable search" of plaintiff's car accrued as of the time plaintiff became aware of the search); *accord Kaster,* 975 F.2d at 1382.

■ Thus, the conspiracy plaintiff describes in his amended complaint—a conspiracy to deprive plaintiff of his privacy inter-

ests—can not now be the subject of a § 1983 cause of action. Moreover, in light of his factual allegations, the "injuries" which plaintiff refers to in his Opposition—*ie.*, his discharge and his prosecution—could not, in any event, serve as the basis for a viable claim under § 1983.

A claim under "§ 1983 is aimed at state action and state actors." *Roche v. John Hancock Mutual Life Ins., Co.*, 81 F.3d 249, 253 (1st Cir.1996). In order for a private defendant to be liable under § 1983, that defendant must—in close cooperation with a state actor—deprive a plaintiff of a legally protected interest. *Id.* at 253–54 ("private actors may align themselves so closely with either state action or state actors that the undertow pulls them inexorably into the grasp of § 1983."). Based upon plaintiff's allegations, however, the state's decision to prosecute plaintiff in this action can not be viewed as a decision which the state made in combination with defendant. Whatever defendant's role in initially implicating plaintiff in any misconduct, there can be no liability flowing to defendant based upon the state's subsequent and independent decision to pursue a criminal prosecution against plaintiff. *Id.* at 254 (holding that defendant employer's alleged misconduct in providing federal authorities with recordings of threatening phone calls allegedly made by plaintiff was insufficient to implicate defendant in a § 1983 conspiracy relating to plaintiff's subsequent prosecution); *cf. Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir.1983) ("the mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under §§ 1983 or 1985."); *Butler v. Goldblatt Brothers, Inc.*, 589 F.2d 323, 327 (7th Cir.1978) ("we decline to hold that the mere act of furnishing information to law enforcement officers constitutes 'joint [activity] with state officials in the prohibited action'") (citations omitted), *cert. denied*, 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 53 (1979).

Similar reasoning applies with respect to plaintiff's discharge. Defendant's termination of plaintiff from his position with the Company was a singularly private act; that is, defendant's decision to terminate plaintiff's employment was defendant's alone, and was not undertaken with any state coercion or input. *See Olsen*, 832 F.Supp. at 1528 (holding that defendant, a private employer, could not be liable to plaintiff, under § 1983, for unjust termination); *Hudson v. S.D. Warren Co.*, 665 F.Supp. 937, 939 (D.Me. 1987) ("Although ... it is undisputed that Plaintiff was discharged based on information provided by the State Police Defendants, the decision to discharge itself was wholly within the province of the [private employer] Defendants."). In short, plaintiff's allegations may or may not describe a conspiracy between defendant and various state actors to intrude upon plaintiff's "reasonable expectations of privacy" by sharing his protected personnel materials between 1988 and 1989. However, plaintiff's allegations in no way support a claim of a conspiracy relating to subsequent events—there is no indication that defendant was responsible for convicting plaintiff in 1992, or that the state was responsible for firing him in that same year.

Thus, assuming plaintiff has described an otherwise actionable conspiracy to deprive him of his protected privacy interests, it is a conspiracy which occurred outside the applicable limitations period. This is fatal to plaintiff's § 1983 claim because his allegations do not describe any actionable conspiracy relating to events which fall within the relevant period—that is, either plaintiff's discharge or his criminal conviction. Accordingly, plaintiff is denied leave to amend his complaint. *See Microtel Franchise & Dev. Corp. v. Country Inn Hotel*, 923 F.Supp. 415, 420 (W.D.N.Y.1996) ("While ordinarily leave to amend is granted, dismissal with prejudice is appropriate where the pleading defect is not curable and repleading would be futile.").

### CONCLUSION

For the reasons set forth above, plaintiff's Complaint is dismissed, and his request for leave to file an amended complaint is denied. The Clerk of the Court is directed to enter judgment in defendant's favor dismissing the Complaint in its entirety.

**SO ORDERED.**